Milton Alpert, J.
This is a motion by claimant for summary judgment and a cross motion by the State seeking dismissal of the claim.
There are no disputes with respect to the essential facts.
The claimant was appointed as a member and chairman of the State Bingo Control Commission for terms of five years, the last of which expires on June 1, 1979.* This was pursuant to section 433 of the Executive Law which also provides that a member of the commission may be removed by the Governor for cause after an opportunity to be heard and that the chairman shall receive compensation fixed by the Governor within the amount made available by appropriation therefor.
Claimant informed the court that his salary was not so fixed but rather was, since his original appointment in 1962, at all times thereafter fixed by section 169 of the Executive Law, as amended from time to time, which in subdivision (k) thereof last fixed claimant’s salary as chairman at $35,250. This was by chapter 992 of the Laws of 1974, in which enactment the Governor participated. There also was an appropriation of $3,000 for expenses.
In 1975, the Governor in his executive budget, at pages 415, 435 and 437 thereof, recommended abolition of the commission and transfer of responsibility for regulation and control of bingo from the Department of State to the State Racing and Wagering Board. Also recommended was the transfer of 26 positions. It is understood that claimant’s office was not one of the 26 recommended for transfer. To implement the Governor’s recommendation, a budget bill (S 3492; A 4509) was introduced in the Legislature which, among other things, was designed to abolish the commission including claimant’s office. That bill passed the Assembly but did not pass the Senate. Accordingly, it did not become law. However, in the budget for the fiscal year beginning April 1, 1975, an appropriation to the State Racing and Wagering Board for "Regulation of *905 Wagering” was made for $454,200, of which $399,200 was for personal service. No other breakdown was provided (L 1975, ch 50).
Commencing with fiscal 1975-76 (April 1, 1975), the Department of Audit and Control has not made any salary and/or expense payments to claimant — the reason given being that no appropriation was made therefor — although claimant has attempted to continue to perform his duties as chairman of the State Bingo Control Commission.
Claimant has filed the instant claim seeking payment of his salary and expenses from April 1, 1975 to the date of filing of the claim. Claimant here moves for summary judgment as no questions of fact remain to be decided.
The State has cross-moved for dismissal on the grounds that the claim does not state a cause of action.
As the court sees it, there aré two legal questions presented for resolution by it. The first is whether section 169 of the Executive Law takes precedence over section 433 of the Executive Law and effectively fixes the salary for the office held by the claimant.
The court finds that section 169 prevails as against section 433 because there has been an administrative practice to follow section 169 and that the Governor has not in fact acted pursuant to section 433 (McKinney’s Cons Laws of NY, Book 1, Statutes, § 129). Also, section 169 is the later enactment. Since both provisions are special and section 169 is the later enactment, section 169 is found to prevail to the extent of any possible inconsistency between them (Statutes, § 399). In this connection, it is noted that the opening paragraph of section 169 provides that the "annual salaries of the officers holding the positions indicated hereinbelow shall be as follows:”. This is mandatory language and does not provide qualifications or conditions. Also, it is noted that section 169 was not amended in 1975 and still stands as law.
The next question relates to whether the budget as adopted has the effect of eliminating claimant’s office as chairman of the State Bingo Control Commission. The court finds that where there is a public office, salary is an incident thereof, that the office may be abolished only by statute, and that failure to appropriate salary to such an office is insufficient action to abolish such an office or to deprive the incumbent thereof of his right to his salary (O’Neil v State of New York, 223 NY 40, 43-44; Matter of Sullivan v Taylor, 279 NY 364, *906 369; Matter of Collins v City of Schenectady, 256 App Div 389; Timpano v Hanna, 77 Misc 2d 874; 881; Lipson v County of Nassau, 40 Misc 2d 146; Matter of Meyer v Commissioner of Public Safety of City of Yonkers, 39 Misc 2d 608).
The essential question at this point is whether the budget as adopted, which is a statute, had the effect of abolishing claimant’s office. The court finds that the budget as adopted did not have this effect for the following reasons:
a. There was a budget bill (S 3492; A 4509) introduced which was designed to abolish the commission including claimant’s office. This' bill passed the Assembly but not the Senate. Thus, a specific law to abolish the commission and claimant’s office was not enacted.
b. While the executive budget apparently described the Governor’s intent (pp 415, 435 and 437), the Legislature did not clearly adopt such intent. The Legislature made a lump sum appropriation for personal service of $399,200 part of which was for the continuation of bingo operations (L 1975, ch 50). Under "Regulation of Wagering” the appropriation reads "Personal service — regular.” The court finds no specific or legislative intent here to abolish claimant’s office. The actual plan was to have such abolition effectuated by the enactment of S 3492; A 4509, but such bill was not enacted.
Accordingly, the court finds the above-cited cases to be precedents and controlling and to the effect that claimant’s office still exists and that failure to appropriate salary therefor did not have the effect of abolishing such office.
Since the budget as adopted did not abolish claimant’s office, the court finds that no statute abolished his office, that his office still exists and that he is entitled to judgment for the appropriate amount of his salary as fixed by section 169 of the Executive Law at $35,250 per annum, plus appropriate interest as provided by law. Such amount shall be computed from April 1, 1975 to September 2, 1975 — the latter date being the date when his motion was heard by the court.
With respect to the claim for an appropriate amount for expenses, the court finds that this was not within the protection of the above-cited cases and that the same depended upon appropriation from year to year. Absent an appropriation for the 1975-76 fiscal year, the claimant is not entitled to judgment therefor.
*907 Claimant’s motion for summary judgment is granted to the extent allowed above. Defendant’s motion is denied.

Legislative Manual, 1974, p 620.