OPINION OF THE COURT
 

 Smith, J.
 

 Plaintiff Anthony Ciervo, a 13-year employee of the New York City Department of Sanitation, commenced this negligence action against defendant City of New York to recover damages for injuries he sustained when he fell on a defective sidewalk while performing his duties as a sanitation worker. At issue on this appeal is whether the common-law firefighter’s rule articulated in
 
 Santangelo v State of New York
 
 (71 NY2d
 
 *467
 
 393) should be extended to New York City sanitation workers. For the reasons that follow, we answer that question in the negative, as did the Appellate Division.
 

 Plaintiff, working as a loader, was part of a two-man team collecting garbage in Queens, New York. While carrying two light bags of garbage in one hand to the sanitation truck, plaintiff attempted to step over the raised lip of a concrete slab and, instead, stepped into a hole in the sidewalk. He fell, sustaining serious injuries which ultimately resulted in his retirement. Plaintiff, and his wife derivatively, sued the City in negligence, noting that the Big Apple Pothole and Sidewalk Protection Corporation had notified the City twice before of the sidewalk’s defective condition. At the conclusion of the liability stage of the bifurcated trial, the jury determined that the City was 83% negligent in causing plaintiff’s injuries and plaintiff was 17% comparatively negligent. The City moved to set aside the verdict, contending that, as a matter of law, the firefighter’s rule precluded plaintiff’s recovery.
 

 Supreme Court granted the City’s motion and dismissed the complaint. Extending the firefighter’s rule to sanitation workers, the court concluded that plaintiff voluntarily chose his occupation with knowledge of the inherent risks involved in the performance of his duties. Moreover, the court noted that the . City recognized the inherent risks of the occupation by providing added benefits to sanitation workers injured in the line of duty. The Appellate Division unanimously reversed, holding that sanitation workers, unlike firefighters and police officers, were not trained experts compensated by the public to confront emergencies on its behalf. Accordingly, the Appellate Division reinstated the jury verdict and remitted the matter to Supreme Court for a trial on the issue of damages, after which Supreme Court entered a judgment for plaintiffs totaling $483,259.46. We granted the City leave to appeal pursuant to CPLR 5602 (a) (1) (ii).
 

 The firefighter’s rule is premised upon long-standing common-law principles which preclude firefighters injured in the line of duty from recovering against property owners or occupants whose negligence in maintaining their premises occasioned the fires
 
 (Santangelo v State of New York,
 
 71 NY2d,
 
 supra,
 
 at 396;
 
 Kenavan v City of New York,
 
 70 NY2d 558). Initially, the rationale underlying the firefighter’s rule was that firefighters, as mere licensees, took the property as they found it
 
 (Zanghi v Niagara Frontier Transp. Commn.,
 
 85 NY2d 423, 439). However, following this Court’s ruling in
 
 Basso v
 
 
 *468
 

 Miller
 
 (40 NY2d 233) — which abolished the distinction between categories of land users — subsequent cases relied upon the doctrine of assumption of the risk in precluding firefighters from recovering damages due to the negligence of property owners in failing to maintain their premises
 
 (see, McGee v Adams Paper & Twine Co.,
 
 26 AD2d 186, 190,
 
 affd
 
 20 NY2d 921). More recently, the firefighter’s rule has evolved into a common-law rule predicated upon principles of public policy
 
 (Santangelo v State of New York,
 
 71 NY2d,
 
 supra,
 
 at 398;
 
 Zanghi v Niagara Frontier Transp. Commn.,
 
 85 NY2d 423, 439,
 
 supra).
 

 In
 
 Santangelo,
 
 we applied the firefighter’s rule to police officers injured in the line of duty, holding that police officers, like firefighters, could not recover damages for negligence “in the very situations that create the occasion for their services” (71 NY2d,
 
 supra,
 
 at 397). In applying the rule to police officers, the Court predicated its decision upon sound principles of public policy resting on the nature of the occupation: “Like firefighters, police are the experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence”
 
 (id.,
 
 at 397). The Court determined, however, that the rule did not leave these officers unprotected because they “receive both training that enables them to minimize the dangers their occupation requires them to face, and compensation and special benefits to help assure that the public will bear the costs of injuries suffered by its protectors in the line of duty”
 
 (id.,
 
 at 397-398).
 

 The City proffers that New York City sanitation workers, like police officers and firefighters, are specially trained to confront risks and hazards on behalf of the public and are compensated accordingly. The City maintains, for example, that its sanitation workers receive added job benefits, including unlimited sick leave, Line of Duty Injury status and corresponding benefits if injured on the job. Furthermore, the City notes that City sanitation workers need not be covered by the Workers’ Compensation Law because the City’s health, accident and disability benefits are greater.
 

 That New York City sanitation workers receive increased benefits if injured during performance of their duties is not dis-positive of the issue here. Rather, in
 
 Cooper v City of New York
 
 (81 NY2d 584, 590), we stated that the “determinative factor” in applying the firefighter’s rule is “whether the injury sustained is related to the particular dangers which police officers are expected to assume as part of their duties.” Thus, in
 
 Cooper,
 
 the Court found that a police officer injured as a result
 
 *469
 
 of a fellow officer’s negligent driving while responding to an emergency call could not recover damages against the City because “there [wa]s no question that [the] plaintiffs injuries were related to a particular risk that she had assumed as part of her duties”
 
 (id.,
 
 at 590).
 

 . Applying the determinative factor articulated in
 
 Cooper
 
 to this case, we conclude that the rule does not include sanitation workers. Contrary to the City’s contentions, City sanitation workers are not expected or trained to assume the hazards routinely encountered by police officers and firefighters. In fact, plaintiff notes that sanitation workers are not required to pick up garbage in situations where doing so will compromise their safety. For example, they are not required to retrieve improperly contained garbage or garbage placed upon an inordinate amount of snow and may, instead, call a supervisor to evaluate those potential dangers. On the other hand, the very nature of their occupation — which “ask[s] [them] to [be] brave by their employment”
 
 (Zanghi v Niagara Frontier Transp. Commn., 85
 
 NY2d,
 
 supra,
 
 at
 
 440)
 
 — requires that police officers and firefighters confront emergencies on behalf of the public. Thus, an obvious anomaly would exist in permitting recovery by police officers and firefighters against the State for injuries sustained by the very experts it employs to deal with such situations
 
 (Santangelo v State of New York, supra,
 
 at 398).
 

 Moreover, to the extent that the City relies upon the doctrine of assumption of the risk, we have previously noted that the continued application of the firefighter’s rule has shifted from the doctrine of assumption of the risk to public policy considerations resting on the nature of the employment
 
 (Santangelo v State of New York, supra,
 
 at 398 [decision premised upon public policy considerations rather than principles of comparative fault];
 
 Zanghi v Niagara Frontier Transp. Commn., supra,
 
 at 439 [the “application of the (rule) is presently grounded on the public policy”]). Indeed, the firefighter’s rule today has strong public policy underpinnings which recognize the heightened risks of injury police officers and firefighters encounter on a daily basis in order to serve members of the general public. These uniformed public safety officers are well trained and equipped to defuse emergency circumstances encountered, which justifies the bar to recovering damages in common-law negligence. Extending this rule to New York City sanitation workers — whose employment does not entail securing public interests at an increased risk of injury to themselves — would abrogate the rule’s underlying policy rationale.
 

 
 *470
 
 Finally, we reject the City’s argument for extension of the firefighter’s rule because sanitation workers, like police officers and firefighters, must follow orders of their superior officers. One would be hard pressed to imagine any occupation in which a subordinate employee would not be required to follow the directions of a supervisor or risk termination. In that instance, sanitation workers are no different from any employees in other occupations.
 

 Accordingly, the judgment of Supreme Court appealed from and order of the Appellate Division brought up for review should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Judgment of Supreme Court appealed from and order of the Appellate Division brought up for review affirmed, with costs.